United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| PRESTON AVERY, ET AL., | ) | Case No.: 11-CV-04456-LHK |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING DEFENDANTS' |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| COUNTY OF SANTA CLARA, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendants County of Santa Clara and Jim Lanz's ("Defendants")
Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Motion"). ECF
No. 27. Having considered the parties' submissions and the relevant case law, the Court GRANTS
the Motion.

## I.     FACTUAL BACKGROUND

Plaintiffs Preston and Lois Avery ("Plaintiffs") own approximately three acres of property
located at 20000 Monterey Road, Morgan Hill, California ("Property"). Declaration of Preston
Avery in Opposition to Motion for Summary Judgment ("Avery Decl."), ¶ 3. Plaintiffs first
purchased the Property in 1997. *Id.* On July 1, 1997, Plaintiffs leased a portion of the Property to
Richard Scully, doing business as Yuba Trucking. Avery Decl., ¶ 4. The area was to be used as a
space for servicing and repairing trucks and for parking not more than four trucks. *Id.* Shortly
after entering into the agreement, Mr. Scully began directing numerous trucking companies to

**United States District Court**
For the Northern District of California

dump dirt, concrete, and asphalt on the Property. *Id.*, ¶ 6. Mr. Scully did not obtain Plaintiffs' permission to do this. *Id.*

Defendant County of Santa Clara ("County") subsequently issued an order for removal of the materials from the Property. *Id.*, ¶ 6. Mr. Avery ordered Mr. Scully to comply with the County's order and to cease the dumping activities. *Id.*, ¶ 7. Mr. Scully promised that he would do so. *Id.* Nevertheless, Mr. Scully continued to allow numerous trucks to dump materials at the Property. *Id.*

On September 10, 1997, the County recorded a Notice of Zoning Violation against the Property. Declaration of Jim Lanz in Support of Motion for Summary Judgment of Defendants ("Lanz Decl."), ¶ 3. Two days later, on September 12, 1997, the County recorded a Notice of Grading Violation against the Property. *Id.*[1]

Plaintiffs ultimately took Mr. Scully to Court and obtained a judgment restoring the premises to them. Avery Decl., ¶ 8. Mr. Scully was additionally prosecuted by the County's District Attorney in a criminal action. *Id.* Mr. Scully entered a plea of no contest and was ordered to remove the materials from the Property and to pay a fine. *Id.* Plaintiffs also entered into a settlement with the District Attorney, pursuant to which Plaintiffs agreed to pay $707.00 to a private road maintenance association for repair of damage to the association's road that resulted from Mr. Scully's activities. *Id.* Despite his agreement with the District Attorney, Mr. Scully failed to remove the offending material. *Id.* Plaintiffs believe he fled the country in 1998. *Id.*

In July 2002, the County issued another abatement order relating to the presence of the materials on the Property. Lanz Decl., ¶ 4.

As a result of Mr. Scully's failure to remove the materials, Plaintiffs filed a lawsuit against several of the trucking companies who dumped materials on Plaintiffs' Property. Avery Decl., ¶ 9. The parties entered into a settlement in August 2004. Plaintiffs spent approximately $90,000 of the settlement proceeds to crush and mix the stockpiled materials into Class II Base Rock. *See* ECF No. 1 ("Compl."), ¶16; Request for Judicial Notice in Support of Defendants' Motion for Summary

---

[1] It is unclear from the parties' papers whether the notices were separate from the County's order that the materials be removed from the Property. *See* Motion at 3; Avery Decl., ¶ 6. However, for the purposes of resolving the instant Motion for Summary Judgment, it is not necessary to resolve this issue.

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Judgment, ECF No. 28 ("RJN"), Ex. A ("Clerk's Transcript") at 157.[2] Crushing the materials

served two purposes.  First, it made removal easier and less environmentally disruptive by reducing

the number of trucks required to transport the material.  Clerk's Transcript at 157.  Second,

processing the material into Class II Base Rock gave it economic value.  *Id.* Class II Base Rock

may be used as recycled material in construction projects.  *Id.*; Avery Decl., ¶ 10.  In his

declaration, Mr. Avery states that Plaintiffs intended to use the processed material for construction

projects at the Property or at another one of Plaintiffs' properties located in Morgan Hill, which

was being developed for residential use ("Residential Property").  Avery Decl., ¶ 10.

Defendants contend that Plaintiffs did not have permits to crush or mix the material on the

Property, nor did Plaintiffs have the permits required to store the stockpile of processed material on

the Property.  Lanz Decl., ¶ 6.  Plaintiffs state that, beginning in 1998, they tried to obtain the

required permits but were unsuccessful.  Avery Decl., ¶ 12.[3]  Plaintiffs further state that, in January

2007, after having heard nothing from the County regarding the permits, Plaintiffs decided to

proceed with crushing the materials.  *Id.*, ¶ 13.[4]

On March 13, 2007, the County issued another grading abatement order to Plaintiffs

relating to the presence of the crushed materials on the property.  Lanz Decl., ¶ 10.  The grading

violations underlying the order included: (1) processing and stockpiling fill material at heights of

25 feet; (2) failing to properly prepare the natural ground to receive the stockpiled material; (3)

failing to properly compact the fill; (4) failing to provide proper erosion prevention/sedimentation

control measures; and (5) altering the natural course of drainage without permit.  Clerk's Transcript

---

[2] In Mr. Avery's declaration, he states that he spent more than $200,000 on crushing and mixing
the materials on the Property.  Avery Decl., ¶ 10; ECF No. 33 (Opposition) at 3.  However, in the
Complaint and during an administrative hearing pertaining to the fines, Plaintiffs stated that they
only spent $90,000 on crushing and mixing the materials.  Compl., ¶ 16; Clerk's Transcript at 157.
Accordingly, the Court treats the $90,000 figure as the accurate figure.
[3] Defendants object to this paragraph of the Avery Declaration on the grounds that it is
inadmissible hearsay, lacks foundation, constitutes improper opinion testimony, and is not based on
personal knowledge.  Objections to Plaintiffs' Evidence, ECF No. 43 ("Defendants' Objections") ¶
2.  The Court agrees that Mr. Avery's recounting of his conversation with a County employee, Mr.
Lee, is hearsay.  Accordingly, this objection is sustained as to this portion of the paragraph.
Defendants remaining objections are overruled.
[4] Defendants object to this paragraph of the Avery Declaration on the grounds that it is
inadmissible hearsay and irrelevant.  Defendants' Objections ¶ 3.  The Court agrees that Mr.
Avery's discussion of his heart attack is irrelevant.  This portion of Paragraph 13 is stricken.
Defendants' hearsay objection is overruled.

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

at 287.  Plaintiffs were ordered to remove the stockpiled materials within 60 days of the notices. *Id.* at 288, 294.  Plaintiffs were also assessed a $1,988 Grading Violation fee.  *Id.* at 288.

Sometime in 2008, after the issuance of the 2007 Notices, Plaintiffs claim that the construction project at their Residential Property was halted as a result of the economic recession. Avery Decl., ¶ 10.  Accordingly, they were only able to make use of approximately 3,000 cubic yards of the processed material in connection with the project.  *Id.*  Disposing of the remaining materials in a landfill would likely have exceeded the economic value of the materials.  *See* Clerk's Transcript at 157 (noting that as of the date of the administrative hearings in 2009, the stockpiled base rock had a market value of $132,000, whereas the cost to dispose of the material at a landfill would have been $330,000).

On July 28, 2009, the County issued a Notice of Code Violation and Administrative Fine ("Notice of Administrative Fine") to Plaintiffs based on the continued presence of the processed materials on the Property.  *Id.* at 265.  The Notice of Administrative Fine stated that, pursuant to Division A37 of the Santa Clara County Ordinance Code ("Division A37"), the County was imposing $1,100 per day in fines on Plaintiffs, which would accrue until the violations were abated ($1,000 per day for grading violations and a $100 per day for the outdoor storage of building materials).  *Id.*  On September 8, 2009, the County sent an Amended Notice of Code Violation and Administrative Fine providing Plaintiffs with an additional 20 days to abate the violations before the fines would begin to accrue.  *Id.* at 342.

## II.        PROCEDURAL BACKGROUND

### A.        Administrative Hearing

In a letter from Plaintiffs' attorney, dated August 17, 2009, Plaintiffs requested an administrative hearing to contest the imposition of the fines.  Clerk's Transcript at 366.[5]

---

[5] Plaintiffs object to consideration of the Clerk's Transcript on the ground that the transcript has not been properly authenticated.  Opposition at 5.  A public record is self-authenticating if it bears a seal purporting to be that of the United States or a state of the United States and "a signature purporting to be an execution or attestation."  Fed. R. Evid. 902(1).  Here, the last page of the Clerk's Transcript bears the seal of the State of California, which purports to have been affixed by "Rachel Nelson, Legal Process Clerk."  Clerk's Transcript at 479.  Additionally, Defendants have submitted a declaration from Neysa Fligor, Deputy County Counsel, attesting to the fact that Exhibit A is a true and correct copy of the Clerk's Transcript.  Fligor Decl. ¶ 3.  Accordingly, the Court concludes that this document is properly authenticated.

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs'[6] administrative hearing was commenced on September 4, 2009. *Id.* at 156. The administrative hearing was continued to October 16, 2009, pursuant to a request from Plaintiffs. *Id.* At the October 16, 2009 hearing, the County agreed to extend the accrual date for the fines an additional 60 days from the date of the hearing to December 16, 2009. *Id.* at 159, 452.

During the administrative hearings, Plaintiffs argued that Division 37 "does not contain a limitation on the maximum amount of the fine and thereby constitutes 'grossly excessive punishment' in violation of the US Constitution as well as a violation of [the] California Constitution['s] provisions prohibiting cruel or unusual punishment/excessive fines." *Id.* at 158. Plaintiffs also argued that the imposition of the fines constituted a "taking of property without due process of law." *Id.*

The administrative hearing officer ("Hearing Officer") rejected Plaintiffs' arguments. *Id.* The Hearing Officer concluded that: (1) the daily fines would "withstand an 'excessive fines' facial constitutional challenge," and (2) the "proposed fines, as applied to [Plaintiffs], [were not] excessive or without limitation." *Id.* In reaching the conclusion that daily fines were not unconstitutional on their face, the Hearing Officer relied upon the facts that: (1) the amount of the fine is determined by the Enforcement Officer on a case by case basis, and (2) the Department is given authority to review accrued fines from time to time to determine whether the accrued fine is reasonable.[7] *Id.* at 158. The Hearing Officer additionally noted that Plaintiffs "had complete control over the amount of the fine" because they are able to "determine[] the time period within which the violations actually are abated." *Id.* Accordingly, the Hearing Officer upheld the fines. *Id.* However, the Hearing Officer ordered that, if Plaintiffs abated the issues within six months from the date the fines began to accrue, all accrued administrative fines would be rescinded. *Id.* at 159.

---

[6] The Hearing Officer's decision names only Mr. Avery. *See* Clerk's Transcript at 156-59. However, Plaintiffs' letter requesting the administrative hearing states that it is written on behalf of both Plaintiffs. *See Id.* at 366. Moreover, the subsequent appeal to the Superior Court was on behalf of both Plaintiffs. *See id.* at 451-52. Thus, for the purposes of the instant motion, the Court will refer to "Plaintiffs," plural, in connection with the Hearing Officer's decision.

[7] Plaintiffs note that, to date, they have not been notified by the County of any review or determination with respect to the reasonability of the accrued fines. Avery Decl., ¶ 32.

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

### B.     Appeal to the Superior Court

On November 25, 2009, Plaintiffs filed an appeal with the Superior Court of California for the County of Santa Clara ("Superior Court") challenging the Hearing Officer's decision.  *See id.* at 1.  Plaintiffs claimed that Division A37 of Chapter I of the County of Santa Clara's ("County") Ordinance Code ("Division A37"), which governs the County's Administrative Hearing process, "violates the provisions of the United States Constitution and the California Constitution that prohibit cruel and unusual punishment and excessive fines… because it does not contain a limitation on the maximum amount of the fine and therefore constitutes a 'grossly excessive punishment.'" *Id.* at 451-52.  Plaintiffs also claimed that Division A37 constituted a taking of property without due process of law.  *Id.* at 452.

On February 22, 2010, the Superior Court affirmed the Hearing Officer's decision.  *Id.* at 452 (this portion of the Clerk's Transcript, which contains the Superior Court's written judgment, shall be referred to as the "Superior Court Judgment").  The Superior Court held that Division A37 was constitutional and that the fines imposed on Plaintiffs were not excessive, "especially in light of the fact that the Hearing Officer's Decision provides that all amounts accrued as administrative fines shall be rescinded if [Plaintiffs] complete the abatement of the code violations within six months of December 16, 2009." *Id.*

### C.     Appeal to the Superior Court's Appellate Division

On March 24, 2010, Plaintiffs filed another appeal with the Superior Court's Appellate Division, challenging the Superior Court's Judgment affirming the Hearing Officer's decision. RJN, Ex. B ("Appellate Division Judgment").[8]  Without considering the merits of Plaintiffs' case, the Appellate Division dismissed Plaintiffs' appeal.  *Id.* at 6.  In dismissing Plaintiffs' appeal, the Appellate Division reasoned that the statutory scheme did not permit any appeal of the fines

---

[8] Plaintiff objects to consideration of Exhibit B, the Appellate Division Judgment, on the ground that the judgment has not been properly authenticated.  Opposition at 5.  The Appellate Division Judgment bears the seal of the State of California and the signatures of three judges of the Superior Court's Appellate Division.  Appelate Division Judgment at 6.  Ms. Fligor has also attested to the fact that Exhibit B "is a true and correct copy of the Order in *In the Matter of Preseton Avery, et al.*, Case Number 1-10-AP-000904, Superior Court of California, County of Santa Clara, Appellate Division, filed July 25, 2011." Fligor Decl. ¶ 4.  Accordingly, the Court concludes that the Appellate Division Judgment has been properly authenticated.  *See* Fed. R. Evid. 902(1).

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

beyond the Superior Court; thus, the Superior Court Judgment was the "final decision in the case." *Id.* at 5.

**D.      The Instant Action**

On September 7, 2011, Plaintiffs filed the instant action.  Plaintiffs assert four causes of action for: (1) Deprivation of Substantive Due Process; (2) Deprivation of Procedural Due Process; (3) Inverse Condemnation; and (4) Declaratory Relief.  Compl., ¶¶ 1-71.  Defendants filed the instant Motion for Summary Judgment on June 19, 2012.  Notably, in connection with Plaintiffs' Declaratory Relief claim, Plaintiff alleges that Defendants should either be required to purchase the Property or, alternatively, that the fines should be rescinded.  *Id.* ¶ 70 ("[I]n view of all attendant facts and circumstances, [Plaintiffs] have the right[:] (1) to have the Property purchased at fair market value by the Defendants, and in addition, [to] be fully compensated for actual interim damages heretofore suffered, or, in the alternative, (2) to have the administrative fines imposed against Plaintiffs rescinded….").

Defendants moved to dismiss all Plaintiffs' claims on June 19, 2012.  Motion at 7-20. Plaintiffs filed their opposition on July 3, 2012.  ECF No. 33 ("Opposition").  Defendants filed their reply on July 10, 2012.  ECF No. 39 ("Reply").

**E.      Current Status of the Violations and Fines**

Both parties agree that the violations have now been abated.  *See* Avery Decl., ¶ 28[9]; Declaration of Neysa Fligor in Support of Defendants' Supplemental Brief Regarding Motion for Summary Judgment, ECF No. 50 ("Fligor Decl."), ¶ 5.  However, there is some debate as to when

---

[9] Defendants object to Paragraph 28 of the Avery Decl. on the grounds that it contains inadmissible hearsay, lacks foundation, is improper lay and expert opinion testimony, is not based on personal knowledge, and is irrelevant.  Defendants' Objections ¶ 9.  Paragraph 28 states: "[b]y mid-April of 2010, I was able to have all the accumulated material removed from my property.  Photographs showing the property following removal of the material are attached as Exhibit C and incorporated herein.  The occupied property at the edges of the photos are the adjacent parcel at 150 Kirby Avenue.  I took these photographs of the property."  Defendants' objections are overruled.  The statement, which concerns the removal of the material from Plaintiffs' Property, is relevant to the issues in this case.  It is based on Mr. Avery's personal knowledge because he took the photos and has knowledge of the Property.  The statement is also not improper opinion testimony as Mr. Avery was merely stating facts within his personal knowledge.  With respect to the lack of foundation objection, the Court assumes this objection refers to the photographs.  Mr. Avery states that he took the photographs and that they are of the Property.  This is sufficient to establish foundation for the photographs.  Finally, the statement does not include hearsay as Mr. Avery does not recount any out of court statements or offer such statements for the truth of the matter asserted.

7

United States District Court
For the Northern District of California

this abatement occurred.  Plaintiffs contend the processed material was removed from the Property by mid-April 2010.  *See* Avery Decl., ¶ 28.  Plaintiffs have produced several undated photos showing an empty lot which he contends is the Property.  *Id.*, Ex. C.  The County contends it was not informed that the material had been removed from the Property until the June 17, 2011 hearing on Plaintiffs' appeal to the Superior Court's Appellate Division.  Fligor Decl., ¶ 5 (stating that the County was first informed that the material had been removed on June 17, 2011).

As to the amount of the fines, Plaintiffs appear to contend that, notwithstanding their abatement of the violations, the fines have continued to accrue.  Avery Decl., ¶ 32.  Plaintiffs state that, as of July 3, 2012 (the date of Mr. Avery's declaration), the accrued fines totaled $1,230,000.00.  *Id.*  Defendants contend that the fines stopped accruing on June 17, 2011, and that the total fines are therefore $603,900.  *See* Defendants' Supplemental Brief Regarding Motion for Summary Judgment, ECF No. 49 ("Defendants' Supp. Brief") at 1.

## III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *See id.*  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  The question is "whether a jury could reasonably find either that the [moving party] proved his case by the quality and quantity of evidence required by the governing law or that he did not."  *Id.* (emphasis omitted).  "[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor."  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Anderson*, 477 U.S. at 255).

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of

8

material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(e). The opposing party need not show the issue will be resolved conclusively in its favor. *See Anderson*, 477 U.S. at 248–49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## IV.    DISCUSSION

### A.    Defendants' Arguments

In the Motion, Defendants argue that: (1) Plaintiffs' claims are barred by *res judicata*, including both the doctrines of claim preclusion and issue preclusion (collateral estoppel), Motion at 7-12; (2) Plaintiffs' claims against Defendant Lanz fail as a matter of law because there is no evidence showing he violated Plaintiffs' constitutional rights, *id.* at 12-15; (3) Plaintiffs' claims against Defendant Lanz fail because he has qualified immunity, *id.* at 15; (4) Plaintiffs' claims against the County fail because there is no evidence the County violated Plaintiffs' constitutional rights, *id.* at 16-17; (5) the imposition of fines was not a taking, *id.* at 17-19; and (6) Plaintiffs have failed to set forth evidence supporting their declaratory relief claim. *Id.* at 19-20. The Court concludes that summary judgment should be entered against Plaintiffs because Plaintiffs' claims

9

are barred by the doctrine of claim preclusion.  Accordingly, the Court need not address

Defendants' remaining arguments.

### B.     Claim Preclusion

Defendants argue that Defendants should be granted summary judgment on Plaintiffs'

claims because Plaintiffs previously litigated these claims before the Administrative Hearing

Officer and the Superior Court and are therefore precluded, pursuant to the doctrine of claim

preclusion, from re-litigating them.  Motion at 7-12.[10]

"Claim preclusion 'treats a judgment, once rendered, as the full measure of relief to be

accorded between the same parties on the same 'claim' or 'cause of action.'"  *Robi v. Five Platters,*

*Inc.*, 838 F.2d 318, 321 (9th Cir. 1988).  Pursuant to "the Full Faith and Credit Act, federal courts

must give state judicial proceedings 'the same full faith and credit… as they have by law or usage

in the courts of [the] State… from which they are taken.'"  *Id.* at 322 (quoting 28 U.S.C. § 1738).

Accordingly, federal courts must "apply the *res judicata* rules of a particular state to judgments

issued by courts of that state."  *Id.*  Thus, in the present case, the Court must apply California law

in determining whether the Superior Court Judgment should be given preclusive effect.  *See id.*

Under California law, the doctrine of claim preclusion will apply if two cases involve the

same claim or cause of action, and there has been a final decision judgment on the merits in the

earlier decided case.  *See id.* at 322.  In determining whether a claim or cause of action is the same,

California courts apply the "primary rights" theory.  *Id.* at 322.  Under this theory, "the violation of

a single primary right gives rise to but a single cause of action."  *San Diego Police Officers' Ass'n*

*v. San Diego City Emps. Ret.*, 568 F.3d 725, 734 (9th Cir. 2009) (quoting *Crowley v. Katleman*, 8

Cal. 4th 666, 681 (1994)).   Thus, "[i]f two actions involve the same injury to the plaintiff and the

same wrong by the defendant then the same primary right is at stake even if in the second suit the

plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts

---

[10] "The preclusive effect of a former adjudication is referred to [generally] as '*res judicata*'."  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988).  The term *res judicata* includes both the doctrines of claim preclusion and issue preclusion (collateral estoppel); however, the term *res judicata* is sometimes used to refer specifically to the doctrine of claim preclusion.  *San Diego Police Officers' Ass'n v. San Diego City Emps. Ret.*, 568 F.3d 725, 734 (9th Cir. 2009); *Robi*, 838 F.2d at 321-22.  In this case, Defendants use the term *res judicata* in reference to the doctrine of claim preclusion.  Motion at 7.  To avoid confusion, the Court will use the term "claim preclusion."

10

**United States District Court**
For the Northern District of California

supporting recovery." *Id.* (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)).

Here the requirements for claim preclusion are satisfied.  Plaintiffs allege the same cause of action in this matter as was alleged in the administrative and state court proceedings.  Plaintiffs allege in this action, as they did in their administrative and state court proceedings, that they were subjected to $1,100 in daily fines as a result of their failure to remove certain material from their property, and that: (1) the imposition of these fines violated their constitutional rights against cruel and unusual punishment and excessive fines, and (2) the fines constituted an unconstitutional taking of Plaintiff's property without due process of law.  *See* Clerk's Transcript at 158 ("Hearing Officer's Decision") ("Appellant contends that [the fines]… violat[e]… the [provisions of the] US Constitution as well as… [the] California Constitution… prohibiting cruel and unusual punishment/excessive fines and the taking of property without due process of law."); *id.* at 451-52 ("Superior Court Judgment") ("The issue on appeal was Appellants' contention that Division A37… which governs the Court's Administrative Hearing process, violates the provisions of the United States Constitution and the California Constitution that prohibit cruel and unusual punishment and excessive fines and the taking of property without due process of law…."); Compl., ¶¶ 36, 37, 59 (alleging that fines were excessive, amounted to cruel and unusual punishment, and constituted a "*de facto* confiscation of Plaintiffs' property").  Accordingly, the Court concludes that this matter involves the same primary right that was at issue in the administrative and state court proceedings.[11]

_____

[11] The Court notes that while Plaintiffs' claims as set forth in the Complaint appear to be based predominantly on the Eighth Amendment and constitutional prohibitions against takings without due process of law, the Complaint includes statements that might conceivably be construed as stating separate constitutional theories.  *See e.g.*, Compl., ¶ 47 (alleging that the Plaintiffs were denied "due process of law because there is no authority for an administrative citation ordinance to impose fines… on a continuing per day" basis).  Nevertheless, each of these arguments is based on the same alleged "injury" (*i.e.* Defendants imposition of daily fines).  Thus, the Court concludes that claim preclusion applies notwithstanding the inclusion of any new theories as to how the fines violated Plaintiffs' constitutional rights.  *See San Diego Police Officers' Ass'n*, 568 F.3d at 734 (holding that, under California law, "the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery"); *Weikel v. TCW Realty Fund II Holding Co.*, 55 Cal. App. 4th 1234, 1245 (1997) (holding that "[f]or purposes of [claim preclusion] analysis, it is of no moment whether the identical causes of action were *in fact* litigated in [the prior action]; all that is required is that [the plaintiff] had the *opportunity* to litigate them in" the prior action).

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Furthermore, there has been a final judgment on the merits.  This matter was fully considered and decided by the Hearing Officer.  *See* Clerk's Transcript at 158.  Subsequently, this matter was appealed to the Superior Court, which conducted its own review, including examining the "administrative hearing record, witness testimony, [and] evidence and [considering] the arguments of counsel." *Id.* at 451-52.  The Superior Court affirmed the Hearing Officer's decision. *Id.* at 452.  The Superior Court's judgment constitutes a final judgment on the merits for *res judicata* purposes.  *Robi,* 838 F.2d at 324 (holding that "the California Superior Court judgment was on the merits and final"); *Perez v. City of San Bruno,* 27 Cal.3d 875, 885 (1980) (holding that there was a final decision on the merits where Superior Court "conduct[ed] a trial de novo and enter[ed] [a] judgment" affirming the ruling of the small claims court).  Because this case involves the same claim as was involved in the proceedings before the Superior Court, and there was a final judgment on the merits in those proceedings, the Court concludes that Plaintiffs' claims are precluded under the doctrine of claim preclusion.

### 1.  The Superior Court Judgment, While Potentially Voidable, Is Not Void, Thus It May Be Given Preclusive Effect

Plaintiffs do not meaningfully dispute that this case raises the same claim as their previous case, or that the Superior Court entered a final judgment on the merits.  Rather, Plaintiffs argue that claim preclusion does not apply to their claims because the Superior Court Judgment was void.  Opposition at 14.  In support of this contention, Plaintiffs note that their appeal to the Superior Court was designated as a limited civil case and that the "jurisdictional limit" in such cases is $25,000.  *Id.*; *see also* Cal. Gov't Code § 53069.4(b)(1) (providing that an appeal of an administrative decision regarding fines imposed pursuant to an ordinance adopted under Section 53069.4 is "a limited civil case").  Plaintiffs argue that, by the time their case was heard by the Superior Court on February 5, 2010, the accrued fines amounted to $55,000, which exceeded the $25,000 jurisdictional limit.  Opposition at 14.  Accordingly, Plaintiffs argue that the Superior Court exceeded its jurisdiction in upholding the fines and that the Superior Court Judgment is therefore void.  *Id.*

Plaintiffs' argument fails.  A judgment is "void" if the rendering court lacks jurisdiction in the "fundamental sense" (*i.e.* the court lacks "authority over the subject matter or the parties").

12

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*People v. Am. Contractors Indem. Co.* (*"American Contractors"*), 33 Cal. 4th 653, 660 (2004). However, "[w]hen a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment" is not void but "merely *voidable*." *Id.* at 661 (emphasis added). The distinction between void and voidable judgments is significant because a voidable "judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack[,] or res judicata." *Id.* (citing *Conservatorship of O'Connor*, 48 Cal. App. 4th 1076, 1088 (1996)); *see also Pajaro Valley Water Mgmt. Agency v. McGrath*, 128 Cal. App. 4th 1093, 1101 (2005) ("In contrast to cases involving other types of jurisdictional defects, a party may be precluded from challenging action in excess of a court's jurisdiction when the circumstances warrant applying principles of estoppel, disfavor of collateral attack[,] or res judicata.") (quoting *Conservatorship of O'Connor*, 48 Cal. App. 4th at 1088).

As applied to the present case, these principles support the conclusion that the doctrine of claim preclusion applies to the Superior Court Judgment regardless of whether the case was improperly classified as a limited civil case. In addressing Plaintiffs' argument, it is helpful to review the history behind the distinction between limited and unlimited cases.

Cases that are currently classified as 'limited' civil cases were once adjudicated by Municipal Courts, which had only limited subject matter jurisdiction. *See Pajaro*, 128 Cal. App. 4th at 1101 (noting that certain matters that are now considered unlimited civil cases were once confined to the "exclusive jurisdiction" of the Superior Courts). Thus, as stated in *Pajaro*, "a [M]unicipal [C]ourt judgment purporting to adjudicate… issues [confined to the exclusive jurisdiction of the Superior Court] would be jurisdictionally defective in the fundamental sense that the rendering court completely lacked subject matter jurisdiction, rendering the resulting judgment void and without preclusive effect." *Id.*

However, the Municipal Courts and the Superior Courts have been unified. *Id.* 1101-02; *see also* Cal. Gov't Code § 69600, Law Revision Comments (noting that Section 69600, which sets forth the number of Superior Court judges in Santa Clara County was "amended to reflect unification of the municipal and superior courts in Santa Clara County pursuant to Article VI, Section 5(e), of the California Constitution, effective July 30, 1998"). Following "unification[,] all

13

causes[,] [including limited civil cases, are] within the original jurisdiction of the superior court." *Pajaro*, 128 Cal. App. 4th at 1102 (internal punctuation and alterations omitted).  Thus, a Superior Court that enters judgment in a limited civil case that could or should have been reclassified as an unlimited civil case does not lack fundamental jurisdiction.  *See Id.* at 1103 (explaining that while tax issues raised in Defendant's answer "had the effect of potentially changing the matter from a limited case to an unlimited case[,] [t]hat change… would not affect the fundamental jurisdiction of the [superior] court.").  A Superior Court's judgment in a limited civil case that could or should have been reclassified as an unlimited civil case is therefore not void but merely voidable.  *Id.* at 1101 (discussing the distinction between void and voidable judgments).  A voidable "judgment is valid until it is set aside…."  *American Contractors*, 33 Cal. 4th at 660.  Accordingly, so long as it has not been set aside, a judgment in a limited civil case that could or should have been reclassified as an unlimited civil case may be given preclusive effect.  *See Pajaro*, 128 Cal. App. 4th at1105 (concluding that "the former judgment [should not be denied]… preclusive effect.").

This conclusion is further supported by the flexibility granted to Superior Courts in dealing with misclassified cases.  As observed in *Pajaro*, under the current regime, "the statutes governing reclassification strongly indicate that a matter may proceed to trial and judgment as a limited case even though it might be subject to reclassification."  *Id.*, 128 Cal. App. 4th at 1103-04 (citing Code Civ. Proc., §§ 403.020, 240.030, 403.040, 403.060).  However, "prior to unification a transfer to superior court was *mandatory* no matter when or how the jurisdictional defect first appeared."  *Id.* at 1104.  The various provisions of the current Code of Civil Procedure granting Superior Courts flexibility in addressing misclassified cases "cannot be reconciled with [the] premise that the court presiding over a limited case lacks jurisdiction in the fundamental sense merely because the case could be reclassified as unlimited."  *Id.*

Thus, in the instant case, while it is arguable that Plaintiffs' appeal to the Superior Court should have been reclassified as an unlimited civil case because the accrued fines exceeded the $25,000 limit for limited civil cases, the Superior Court, which has jurisdiction over both limited and unlimited civil cases, did not lack "fundamental" jurisdiction over the case.  *See id.* at 1100.  The Superior Court Judgment was therefore voidable at best.  Accordingly, the Superior Court

14

Judgment "is valid until it is set aside, and [Plaintiffs]… may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack[,] or res judicata." *American Contractors*, 33 Cal. 4th at 660.  The Superior Court Judgment has not been set aside by the Superior Court or on direct appeal.  Thus, it may be given preclusive effect pursuant to the doctrine of claim preclusion. *See American Contractors*, 33 Cal. 4th at 660 (holding that a voidable judgment is "valid until it is set aside"); *id.* at 665 ("[A] voidable judgment must be challenged while the trial court or Court of Appeal can still correct the mistake"); *Pajaro*, 128 Cal. App. 4th at 1101, 1105 (holding that Superior Court's judgment in case that was improperly classified as a limited civil case was not void and should be given "preclusive effect" in subsequent action).

Plaintiffs' rely on *311 South Spring Street Company v. Department of General. Services ("311 Spring Street"),* 178 Cal. App. 4th 1009 (2009), for the proposition that the Superior Court Judgment is void.  *See* Opposition at 14-16.  Plaintiff's reliance on *311 Spring Street* is misplaced. In *311 Spring Street*, the California Court of Appeal held that a judgment granting plaintiff postjudgment interest at a rate of 10 percent was void and subject to collateral attack because California Constitution, Article XV, Section 1 expressly provided that postjudgment interest was limited to 7 percent.  *See id.*, 178 Cal. App. 4th at 1018.  The *311 Spring Street Court* did not hold that the trial court's judgment was void because the trial court lacked fundamental jurisdiction. Rather, the Court reasoned that, in granting 10 percent postjudgment interest, the trial court acted in "excess of [its] jurisdiction," and that an act which exceeds the Court's jurisdiction is void.  *Id.* at 1015, 1018.  The *311 Spring Street* Court's conclusion that the trial court's judgment was void because it exceeded the trial court's jurisdiction directly conflicts with the California Supreme Court's holding in *American Contractors* that "[w]hen a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is [not void but] merely voidable."  *Id.*, 33 Cal. 4th at 661; *see also id.* (distinguishing void and voidable judgments because a voidable "judgment is valid until it is set aside").  Moreover, it does not appear that the *311 Spring Street* Court considered *American Contractors*.  Accordingly, this Court declines to follow *311 Spring Street*.

Plaintiffs also cite *Wozniak v. Lucutz* in support of their argument that the Superior Court Judgment should not be given preclusive effect.  *See* Plaintiffs' Supplemental Memorandum of

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Supp. Brief") at 3 (citing *Wozniak*, 102 Cal. App. 4th 1031 (2002), disapproved on other grounds by *Le Francois v. Goel*, 35 Cal. 4th 1094 (2005)).  In *Wozniak*, the plaintiff filed a complaint seeking damages for personal injuries and property damage arising out of an automobile accident. *Id.*, 102 Cal. App. 4th at 1036.  The complaint was originally filed in Municipal Court.  *Id.*  The complaint included a remittance clause that provided that plaintiff "remits judgment in excess of this court's jurisdiction, for the purpose of being allowed to file in this court, subject to a motion to transfer this action to the superior court in the event the damages of plaintiff reasonably appear to exceed the jurisdictional limits of the municipal court." *Id.*  While the case was pending, the trial courts were unified. *Id.*  The case subsequently went to trial before Judge Barbara A. Meiers. *Id.* at 1037.  The jury returned a verdict of $47,500 plus $10,500 for loss and/or damage to vehicle. *Id.* In light of the fact that the jury returned a verdict in excess of $25,000, plaintiff made an "oral motion to amend the complaint to remove any consent to remit and to transfer case to superior general jurisdiction court." *Id.* (internal alterations omitted).  In response to plaintiffs' motion, Judge Meiers determined that the remittance clause was invalid because it was "ambiguous and conditional." *Id.*  Judge Meiers subsequently declared a mistrial and ordered that the case be "'transferred,' (i.e., reclassified)… to a general jurisdiction case." *Id.*  Due to the fact that plaintiffs' motion to transfer was made orally and that Judge Meiers' decision to order a mistrial was made sua sponte, defendant "had no opportunity to conduct research or file opposition papers…." *Id.*

The case was subsequently reclassified as an unlimited civil case and transferred to Judge Malcolm H. Mackey. *Id.* at 1037-38.  After the transfer, defendant moved to have "judgment in the sum of $25,000 [reinstated], pursuant to the case's status as a limited civil case[] and plaintiff's statement in the pleading remitting any judgment in excess of $25,000." *Id.* at 1038.  Judge Mackey granted defendant's motion, holding that "[t]he municipal court judge was without authority when… [she] allowed plaintiff to amend the complaint, declared a mistrial, and ordered the case transferred to superior court." *Id.*  Judge Mackey thereafter entered judgment in favor of plaintiff for $25,000 plus costs. *Id.*  Plaintiff appealed, arguing that "Judge Mackey had no

16

authority to enter judgment on a verdict that had been voided by Judge Meiers," and, alternatively, "if Judge Mackey had jurisdiction to enter judgment, he should have entered judgment for the full amount of the verdict and not $25,000." *Id.* at 1038-39.

The Court of Appeal rejected plaintiff's arguments. The Court of Appeal held that Judge Mackey did not lack jurisdiction in the fundamental sense because, following unification there was only one Superior Court; thus, Judge Mackey "clearly had jurisdiction over the subject matter and the parties." *Id.* at 1040-43. The Court of Appeal also determined that Judge Mackey did not act in excess of his jurisdiction in reversing Judge Meier's order and entering judgment in the amount of $25,000. *Id.* at 1040-43. The Court of Appeal further rejected plaintiff's argument that Judge Mackey should have entered judgment in the full amount of the verdict. *Id.* at 1044-46. The Court of Appeal reasoned that "the complaint contained a clear, unambiguous[,] and valid remission clause that was not stricken or amended prior to or during trial," and defendant "may have taken actions and adopted trial strategy in reliance on" the $25,000 damages limit. *Id.* at 1045. Accordingly, it was proper for Judge Mackey to order that judgment be entered in the amount of $25,000. *Id.* at 1046.

*Wozniak* is inapposite for several reasons. First, *Wozniak* does not address the key issue in the instant case, *i.e.* whether the Superior Court Judgment, which is potentially voidable for exceeding the Superior Court's jurisdiction, but has not been set aside, may be given preclusive effect in a subsequent proceeding. *Wozniak* discusses the distinction between judgments in cases where the court lacks fundamental jurisdiction and judgments which are in excess of the court's jurisdiction. *Id.* at 1040. However, the *Wozniak* Court never discusses the distinction between void judgments, which are always invalid, and voidable judgments, which are valid until set aside by the trial court or the Court of Appeal on direct review (*American Contractors*, 33 Cal. 4th at 660), much less reaches the issue of whether a voidable judgment may be given preclusive effect.

Second, the procedural posture in *Wozniak* was entirely different. In that case, defendant challenged Judge Meiers' order, which would have allowed damages in excess of $25,000, before Judge Mackey while the case was still in Superior Court. As noted in *Wozniak*, Judge Mackey and Judge Meiers constituted a single court for the purposes of the trial proceedings. *See id.* at 1036 n.

17

1 (holding that, while "two departments [were] involved in the instant trial court proceedings…there [was] only one court-the [S]uperior [C]ourt")).  Thus, by challenging Judge Meiers' order before Judge Mackey, defendant gave the trial court an opportunity to correct its erroneous ruling prior to the entry of a final judgment in the matter.  *See id.* at 1042 (stating that, in reversing Judge Meiers' ruling, Judge Mackey was exercising the trial court's power to "reconsider its interim rulings… at any time prior to entry of judgment").  Here, in contrast, to the extent Plaintiffs are challenging the validity of the Superior Court Judgment, they are doing so before a federal court in an entirely separate, collateral proceeding.  This difference in procedural posture is critical because a judgment like the one in Plaintiffs' case, which is potentially "voidable" because it grants relief in excess of the jurisdictional limit in a limited civil case, "must be challenged while the trial court or Court of Appeal can still correct the mistake."  *American Contractors*, 33 Cal. 4th at 665.  Plaintiffs have not contended that they raised their arguments regarding the Superior Court's jurisdiction in a limited civil case before the Superior Court or Court of Appeal.  Moreover, neither the Superior Court nor Court of Appeal has set aside the judgment against Plaintiffs.  *See* Appellate Division Judgment at 5-6 (holding that the Superior Court Judgment was the "final decision in the case").  Accordingly, the Superior Court Judgment may be given preclusive effect in these proceedings.  *See Pajaro*, 128 Cal. App. 4th at 1105 (holding that Superior Court's judgment in case that was improperly classified as a limited civil case should be given "preclusive effect" in subsequent action).

Third, *Wozniak* is distinguishable because the defendant in that case had no indication that the damages might exceed $25,000.  The defendant relied on the remittance clause which provided that plaintiff would "remit[] [any damages] in excess of this court's jurisdiction…."  *Id*, 102 Cal. App. 4th at 1036.  *After* trial was over, and the jury returned a verdict in excess of $25,000, Judge Meiers held for the first time that the remittance clause was invalid.  *Id*. at 1037; *see also id.* (noting that due to the fact that plaintiff's motion to transfer was made orally and that Judge Meiers' decision to order a mistrial was made "unilaterally," without a motion from plaintiff, defendant "had no opportunity to conduct research or file opposition papers").  As the Court of

18

Appeal recognized, defendant was prejudiced because he "may have taken actions and adopted trial strategy in reliance on" the remittance clause and the $25,000 damages limit. *Id.* at 1045.

Here, Plaintiffs cannot contend that they acted in reliance on a valid remittance clause. Moreover, Plaintiffs not only knew that the fines were accruing and exceeded $25,000, but Plaintiffs also specifically argued that the fines were unconstitutional on the grounds that there was no "limitation on the maximum amount of the fine." Clerk's Transcript at 452. Furthermore, as will be discussed in more detail *infra*, Plaintiffs were directly responsible for causing the fines to accrue beyond the $25,000 limit as Plaintiffs failed to timely abate the violations or pay the fines as they accrued. Thus, unlike the defendant in *Wozniak*, Plaintiffs here cannot contend that they were surprised by a judgment in excess of $25,000. Given the fact that Plaintiffs were aware that the judgment against them would exceed $25,000, they could have, and should have, requested that the case be reclassified while the case was still before the Superior Court. Plaintiffs cannot now, in a collateral lawsuit in federal court, challenge the validity of the Superior Court Judgment. Accordingly, the Court concludes that the Superior Court Judgment may be given preclusive effect.

### 2. Claim Preclusion Applies Notwithstanding the Increase in Accrued Fines

In concluding that the doctrine of claim preclusion applies, the Court is cognizant of the fact that, when the Superior Court entered its judgment in February 2010, the accrued fines would have been approximately $74,800[12], whereas now, the accrued fines are at least $603,900. Defendant's Supp. Decl. at 1. Additionally, when the Superior Court issued its judgment, Plaintiffs still had several months to abate the violations before the fines became non-rescindable. *See* Clerk's Transcript at 452, 159 (ordering that the fines would be rescinded if Plaintiffs abated their violations by June 2011). Given the difference in the amount of the accrued fines at issue in these proceedings, as compared to what was at issue when the Hearing Officer and Superior Court issued their decisions, this Court ordered supplemental briefing on the applicability of *res judicata*. *See* ECF No. 47. Specifically, this Court ordered the parties to address the subject of whether, for *res judicata* purposes, Plaintiffs' claim in the current proceedings is still the same as Plaintiffs' claims

---

[12] The fines began to accrue on December 16, 2009. Clerk's Transcript at 159. There are 68 days between December 16, 2009 and February 22, 2010, the date of the Superior Court's Judgment. *Id.* at 452. Accordingly, the total accumulated fines as of the date of the Superior Court Judgment would have been approximately $74,800 (68 day x $1,100 per day).

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

in the administrative and Superior Court proceedings notwithstanding the increase in the total accrued fines. *See Id.* at 2.

In their supplemental briefing, the only case identified by either party on this subject was an unreported decision from the United States District Court from the Middle District of Florida, *Marfut v. City of N. Port, Fla.*, 8:08-CV-2006-T-27EAJ, 2009 WL 790111 (M.D. Fla. Mar. 25, 2009). *See* Defendants' Supp. Brief at 2. In *Marfut*, the Court determined that, under Florida law, neither the doctrine of issue preclusion nor the doctrine of claim preclusion barred plaintiff from raising an Eighth Amendment challenge to daily fines totaling $75 per day imposed as a result of plaintiff's properties being in violation of certain ordinances, where such fines had accumulated to $48,225.65. *Id.*, 2009 WL 790111 at *5-6. The fines were originally imposed during administrative hearings held by the City of North Port's Code Enforcement Board ("CEB"). *Id.* at *3. Defendants argued that because plaintiff had the opportunity to litigate the validity of the fines during the CEB proceedings, her Eighth Amendment claims were precluded under the doctrines of claim preclusion and issue preclusion. *Id.* at *5-6.

With respect to the issue of claim preclusion, the *Marfut* Court held that, under Florida law, plaintiff's Eighth Amendment claim was not precluded because "at the time of [the CEB] proceedings, no fine had yet been imposed." *Id.* at *6. "Plaintiff's assertion of an Eighth Amendment violation before the CEB actually imposed the fine would thus have been premature." *Id.* Furthermore, because plaintiff was now subject to tens of thousands of dollars in fines, "the identity of Plaintiff's Eighth Amendment cause of action is distinct from any such cause of action Plaintiff may have had during the CEB hearings." *Id.* The *Marfut* Court concluded that Plaintiff's Eighth Amendment challenge was not barred under the doctrine of issue preclusion for the same reason. *See id.* at *5 (holding that, because the fines had since grown to tens of thousands of dollars, plaintiff's "Eighth Amendment challenge to accumulated fines… could not have been litigated in its present context" during the CEB proceedings).

*Marfut* is distinguishable in several respects. As an initial matter, in *Marfut* no fines had been imposed before the CEB proceedings. Moreover, it is not clear that the plaintiff in *Marfut* raised her Eighth Amendment challenge before the CEB, much less specifically challenged the

20

fines on the grounds that they could accumulate to a substantial amount. Indeed, it is not clear that the plaintiff in *Marfut* was present at the CEB proceedings imposing fines, or that she received notice that the fines were accruing before they had reached tens of thousands of dollars. *See id.* at *3, 8 (noting plaintiff's allegation that "she was not informed of the existence of a daily fine" until she received a collection letter seeking thousands of dollars).

In contrast, in the present case, the accrued fines, while rescindable, were already significant (approximately $74,800) when the Superior Court entered its judgment. Furthermore, in upholding the fines, both the Hearing Officer and the Superior Court considered Plaintiffs' Eighth Amendment challenge, including Plaintiffs' arguments that the fines were unconstitutional because there was no "limitation on the maximum amount of the fines." Clerk's Transcript at 158, 452. Nevertheless, both the Hearing Officer and the Superior Court concluded that the fines were not excessive under the Eighth Amendment. *See* Clerk's Transcript at 158 (Hearing Officer's conclusion that the fines were not "excessive or without limitation," particularly because Plaintiffs "ha[ve] complete control over the amount of the fine in that [Plaintiffs] determine[] the time period within which the violations actually are abated); *id.* at 452 (Superior Court affirmance of Hearing Officer's decision).

Moreover, the *Marfut* plaintiff was first given notice of the violations only months before fines were imposed. *See Marfut*, 2009 WL 790111 at *3 (noting that plaintiff was first given notice of her violations with respect to the Deming property on March 12, 2004, and that the CEB imposed fines on October 28, 2004); *id.* (noting that plaintiff was first given notice that she needed "to obtain a permit for a tent located in the back yard of the Bumford property" in December 2006, and that the CEB imposed fines on January 25, 2007). In contrast, Plaintiffs in the instant case had more than ten years notice of the violations before the daily fines were imposed, and Plaintiffs were given *numerous* chances to abate the violations and thus to have the fines rescinded or to prevent the accrual of fines.

Specifically, Plaintiffs were first ordered to abate the violations in approximately 1997, fifteen years ago. *See* Avery Decl., ¶ 6. Plaintiffs received additional abatement orders in July 2002 (Lanz Decl., ¶ 4), and March 2007 (Clerk's Transcript at 287-89). On July 28, 2009,

21

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

approximately twelve years after the first abatement order, Plaintiffs were first informed, in a Notice of Code Violations and Administrative Fines, that they would be fined $1,100 per day until they abated the violations. *Id.* at 265. Plaintiffs still did not abate the violations. Subsequently, on September 8, 2009, Plaintiffs received an amended notice of violation granting Plaintiffs an additional twenty days to abate the violations before the fines would begin to accrue. *Id.* at 342. Plaintiffs nevertheless failed to comply. Then, on October 16, 2009, at the first of two administrative hearings pertaining to the fines, the County granted Plaintiffs an additional 60 days, until December 16, 2009, to remove the materials before the fines would begin to accrue. *Id.* at 159; Avery Decl., ¶ 32. Again, Plaintiffs did not comply. Finally, in the Hearing Officer's decision on November 4, 2009, Plaintiffs were granted an additional six months after December 16, 2009, to abate the violations in order to have the fines rescinded. *See* Clerk's Transcript at 159.

In the instant case, Plaintiffs claim that the material was removed by mid-April 2010, before the end of the six month period (Avery Decl., ¶ 28), but this claim is not credible even by summary judgment standards. As an initial matter, the only evidence Plaintiffs provide in support of their claim is: (1) a conclusory statement from Mr. Avery, and (2) several undated photos of an empty lot purporting to be Mr. Avery's property. *Id.*, ¶ 28; *id.*, Ex. C. Moreover, while Plaintiffs claim now, on summary judgment, that the violations were abated in mid-April 2010 and argue in their Summary Judgment Opposition that the fines are "unreasonable, oppressive, and unconstitutional" because they continued to accrue despite "the fact that [Plaintiffs have] removed the materials" (*see* Opposition at 12, 20), Plaintiffs failed to include in their Complaint: (1) any allegations relating to the date the violations were abated, or (2) any claims based on the fact that the fines continued beyond the point the violations were abated. Plaintiffs' failure to include these allegations in their Complaint, or to raise their claims regarding the abatement date prior to summary judgment, cast serious doubt on the credibility of their contentions regarding the abatement date. The Court also notes that, to the extent Plaintiffs are attempting to raise for the first time, on summary judgment, a claim that the fines are unconstitutional because they continued to accrue after the date the violations were abated, this claim must be rejected. A party may not raise a claim for the first time on summary judgment. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457

22

F.3d 963, 969 (9th Cir. 2006) (holding that factual allegations and claims raised for "first time in Pickern's opposition to summary judgment" could not be used to defeat defendants' motion for summary judgment).

Furthermore, even if the Court accepts the proposition that the violations were abated by mid-April 2010, this fact does not alleviate Plaintiffs of responsibility for the continued accrual of the fines. Significantly, despite claiming to have abated the violations by mid-April 2010, Plaintiffs failed to inform Defendants that they abated the violations until June 17, 2011, more than a year later. *See* Fligor Decl., ¶ 5 (stating that the Plaintiffs' attorney first informed Ms. Fligor that the violations had been abated at the June 17, 2011 hearing on Plaintiffs' appeal to the Superior Court's Appellate Division). Not only does this fact cast serious doubt on Plaintiffs' claim that they abated the violations in mid-April 2010, but also it further supports the conclusion that Plaintiffs are directly responsible for the continued accumulation of the fines because Plaintiffs failed to inform Defendants of the abatement. Indeed, by the time Plaintiffs bothered to inform the County that the materials had been removed, the fines were not only non-rescindable, they had accrued to approximately $603,900. *See* Defendants' Supp. Brief at 1.[13]

Notably, Plaintiffs attempt to shift responsibility to the County for the continued accrual of the fines beyond Plaintiffs' alleged mid-April abatement date. Plaintiffs argue, in essence, that because the Hearing Officer's decision affirming the constitutionality of the fines rested in part on the fact that the County had "authority to review the accrued fines" (Clerk's Transcript at 158), the County was under an obligation to continually review the situation to make sure the violations had not been abated. Opposition at 11-12; *see also id.* at 18 (arguing that "Defendants have made no attempt to ascertain a reason for continuing accrual of the fines"). The Court is not persuaded. Plaintiffs cannot blame the County for the continued accrual of the fines when Plaintiffs did not inform the County of the alleged violation abatement.

---

[13] The Court also notes that Plaintiffs cannot claim that they are unsophisticated about dealing with the County or litigating claims relating to property ordinance violations. Plaintiffs have significant prior experience in these matters. *See Avery v. Cnty of Santa Clara*, No. H033049, 2010 WL 1972856, at *1 (Cal. Ct. App. 2010) (noting that, since 1977, Plaintiffs have received repeated notices of violations relating to their use of another property in Morgan Hill and that Plaintiffs have litigated at least one other case regarding property ordinance violations, including appealing to the California Court of Appeal, *Avery v. County of Santa Clara*, H031157, Jul. 28, 2008).

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

In the end, the Court concludes that claim preclusion applies notwithstanding the increase in the amount of the accrued fines. The increase in the amount of the accrued fines was due to Plaintiffs' failure: (1) to abate the violations earlier so the fines could be rescinded; (2) to timely inform the County of Plaintiffs' abatement of the violations, or (3) to pay the fines as the fines were accruing. It would provide a perverse incentive to allow Plaintiffs to relitigate all their claims regarding the constitutionality of the fines now, simply because the fines have accrued to a significant amount as a result of Plaintiffs' failure to take the steps necessary to prevent the fines from accruing. Indeed, while the *Marfut* Court declined to find either claim preclusion or issue preclusion applied to plaintiff's Eighth Amendment claim, the Court ultimately dismissed the claim on the grounds that "it would be contrary to reason and public policy to allow plaintiffs to evade responsibility simply by neglecting to (or deciding not to) pay fines for so long a period of time that the cumulative amount owed becomes large enough for such plaintiffs to argue unconstitutionally excessive punishment." *Id.*, 2009 WL 790111 at *7 (quoting *Moustakis v. City of Fort Lauderdale,* No. 08–60124–CIV, 2008 WL 2222101, at *2 (S.D. Fla. May 27, 2008)).

As recognized by the Hearing Officer, Plaintiffs have always had "complete control over the amount of the fine in that [they] determine[d] the time period within which the violations actually are abated." Clerk's Transcript at 158. Allowing Plaintiffs to relitigate their claims in this context, where the only change in circumstances is that the accrued fine has increased and this increase can be attributed directly to Plaintiffs' own lack of diligence in remedying the underlying violations, would effectively "eviscerate" the doctrine of *res judicata* in the context of daily fines. Defendants' Supp. Brief at 2. Accordingly, the Court concludes that Plaintiffs' claims are precluded notwithstanding the increase in the total accrued fine.

## V.      CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED on the ground that Plaintiffs' claims are precluded pursuant to the doctrine of claim preclusion. In light of the Court's conclusion, the Court need not consider the remaining arguments raised by Defendants in their Motion for Summary Judgment. The Clerk shall close the file.

United States District Court
For the Northern District of California

1

**IT IS SO ORDERED.**

2

3

Dated: November 13, 2012

_____
LUCY H. KOH
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 11-CV-4456-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT